May it please the Court, my name is Richard Willard on behalf of the appellant in this case. The complaint in this case involved allegations that the defendants were responsible for sending some 380,000 e-mails in violation of the California unsolicited commercial e-mail statute. The District Court, Judge Chesney, dismissed the complaint as violating Rule 9b of the Federal Rules of Civil Procedure. And I think we can understand that her ruling was reasonable in light of the view she then had that in order to state a nonpreempted claim under the California statute, you had to plead all of the elements of common law fraud. That was her decision in the Wong case, initially, before she decided our case. And it is understandable, if that is required, that you would conclude that Rule 9b would apply in the first place, and you would conclude that the complaint in this case did not satisfy 9b, because we will admit we do not plead all of the elements of common law fraud, because we don't think the California statute requires it, and we don't think that the Federal statute does either. Now, recently, we submitted last week a Rule 28J letter pointing out that Judge Chesney has now changed her view and reversed her prior position in the Wong case, which we attached. And she now agrees with us that you do not have to plead and prove every element of common law fraud to have a nonpreempted claim under the Federal Can-Spam Act. And I think that's to understand your Honor. I don't know what that does for us. I mean, consistency is the hobgoblin of small minds or something like that. But we're reviewing this ruling. I understand, Your Honor. But I think the two legal issues, 9b and nonpreemption, do relate in this sense. And maybe I can best illustrate it by comparing a typical common law fraud case with a statutory case under the California anti-spam law. Common law fraud typically involves someone who makes an intentional misrepresentation in order to induce reliance by a victim, who then loses money as a result of entering into a transaction. Spam hurts its victims in a different way. It hurts them by inundating their computer networks, by making their email systems difficult to use, by requiring people to adopt spam filters and other defensive methods to try to mitigate the damage. And all that happens whether or not the end recipient ever even reads the email or relies upon it to enter into a commercial transaction or loses money. Now, certainly that could happen, and that would be common law fraud. But the evil of spam, as evidenced from the legislative findings both at the federal and state level, is that it, by its sheer volume, overwhelms computer networks and damages the victims, whether or not they enter into a questionable transaction with the spammer. Well, but you're not the person being defrauded. So, but you're suing under a statute that has certain requirements. Yes, Your Honor. And the question is not so much whether you have to prove common law fraud in the sense that you relied, et cetera, but the question, I thought, was whether or not the statute requires that in order to be, to violate the statute, the communication has to be fraudulent. Well, Your Honor, I think you're asking two questions. Yes. The first is the damage to our client as an Internet service provider is that our client does have to expend money to develop spam filters in order to make the system usable, and its computers can be clogged by the spam. So, even though the end recipient also is a victim, our client is as well and has standing under the California statute, and that is not an issue on this appeal. No, I'm not questioning that. Yeah. So, it does. Yes, but the question, I'm sorry. Okay, go ahead. I won't interrupt you. I'm sorry. I thought your second question was how is this, how are these emails false and deceptive under the California statute? And if that's your question, the California statute defines three categories of unsolicited commercial emails that are violative of the statute. That's ones that contain someone else's domain name without their permission, and in this case we allege there were a large number of emails that looked as though they came from HyperTouch's network, which were forged because they didn't. They came from the defendant's. The second category is those that are accompanied by falsified, misrepresented, or forged header information, and again we allege that they used falsely registered domain names, which appeared in the header information as a way of trying to evade the spam filters. And then the third is those that have subject lines that a person knows would be likely to mislead, and here we allege the similar thing. That is where they say, offer premiums, they say are free or complimentary, when in fact you have to spend money on goods and services in order to receive them, and that's the Federal Trade Commission in a regulation we cite in our brief that said that kind of subject line is false and misleading. So that's what we've alleged in our complaint. But isn't the question, wasn't the question before the district court whether or not the Federal pleading requirements apply? Yes, Your Honor. And she found that they were. They did. And she found that the complaint as pled did not sufficiently allege or sufficiently allege fraud such that it ought to be replit, ought to be amended, and then your client said, to heck with you, I'm going up. Yes, Your Honor, because she had expressed the view in the long case which she cited that in order to state a nonpreempted claim, you had to allege all of the elements of common law fraud. We knew we couldn't do that. And that's why we elected her to make our appeal. Well, do you think that she was requiring you to plead that you were misled by these? Because I didn't read the order as requiring that. Yes, Your Honor. I believe it does. In fact, the Judge Chesney's decision in the long case that we attached to our Rule 28J letter, page 7, she said, and if I could just quote one short paragraph, So, Judge Chesney has expressed that she thought you had to plead those in order to have a nonpreempted claim. And that's why we pursued an appeal, because we didn't think we could satisfy her. Okay. Was that a complaint brought by a service provider? Your Honor, I don't, we attached it, I don't know what the identity of the plaintiffs were. But it involved an email, it was an email case, like our case here. Now, the other thing Judge Chesney said in her order was that our Did you ever file a motion for reconsideration in front of the good judge since she's issued this last decision saying, we think now you'd change your mind? Well, Your Honor, I don't think she has jurisdiction because her last decision came out 10 days ago. All right. After this case had been briefed before the court. I guess I'm having a tough time. I read the 28J letter, but I'm having a tough time suggesting that what you saw in her order is really in her order in this case. Your Honor, she didn't put it, it's not explicit in her order in this case. I'll admit that. What it says in this case is, if you're going to plead claims that are fraud, equivalent in fraud, you're going to have to plead them with more specificity. So do it, and then I'll let you go forward. And you said, no way, I don't want that. I'm going to tell you I don't have to, and I'm going on a beat. That's what we did, Your Honor. And the reason was because she had in this related, this other case, not technically related, but involved in the same statute, said that in order to have a nonpreempted claim, you had to allege all of these elements. And we think. Well, I never saw that in this case. I never saw that either. So I'm having a tough time. Your Honor, we cite. I know you've cited it in your brief, but I'm having a tough time seeing in this order all along case ideas. Right. Your Honor. I'd like you to get to this case. All right. Let me try to get to this case. The judge says he never identified what was wrong with the allegations of our complaint in terms of specificity about the 11 sample emails we attached. What she said was, you can't just describe some sample emails. You have to describe why each of the 380,000 emails you're challenging is fraudulent. And we don't think the federal rules, Rule 9b, even if it applies, go that far. And so, for example, one of the cases we rely upon is the case by this circuit, Cooper v. Pickett, cited in our brief. Well, it's my understanding, frankly, that after reading the complaint, that the complaint itself doesn't even say that the 11 samples are representative of specific categories of emails received. Your Honor. All I saw in the complaint is they're just sample copies. Your Honor, the complaint explains how each of them represent categories of false or deceptive emails sent by the defendant. So, for example, the complaint says that there were 40,000 emails that contained false prom information by purporting to come from HyperTouch's network when, in fact, it didn't. So that certainly explains how that email was representative of a category. Well, I don't, see, I don't quite follow this, because if this were a preliminary injunction case, maybe that showing might be good enough or the pleading might be good enough. But what you're asking for, as I understand it, is statutory damages for each email. And you want the money lost, restitution and damages for all the goodwill you've lost for all of these 380,000. So therefore, you want the Court to find that there are 380,000 deceptive, fraudulent, misleading, what the language is in the statute, without ever having to plead the 380,000. And that doesn't do it. Yes, Your Honor. I don't see how you'd do that. This is a little bit like Cooper v. Pickett, which we cite, which involved a situation where fraud occurred in reporting consignment sales as completed sales. But the Court held that the plaintiff did not have to describe each transaction in the complaint, did not have to attach each invoice to the complaint, that that would be too great a burden. Now, we have no doubt that, and we are prepared to produce copies of all of those emails to the defendants in discovery. The question isn't should they be able to find out which emails we're talking about. They should. But we're prepared to do that. The question is, do we have to attach and describe all of them to our complaint? Right. And the question is whether the rules of pleading require that with respect to the fact that they have to be fraudulent. You have to show that each is deceptive and misleading. I understand, Your Honor. Could I just analogize, for example, a Ponzi scheme case? We've all read about Bernie Madoff and so forth. Someone running a Ponzi scheme sends his clients false statements every month describing fictitious securities transactions that occur. And this goes on for a period of years. Now, obviously, those documents may be very important evidence in the case. But does the plaintiff have to attach and describe in the complaint every single one of those monthly statements that goes on over a period of years in order to satisfy Rule 9b? We think that's an unreasonable burden. We don't know any court that has held that's required. And it would make this statute unworkable. Let me ask you, how do you distinguish your case from consumer bargaining airway, bargain giveaways versus LLC? Oh, Your Honor, I'm going to have to take a look and see if I can remember what that case was about. I mean, that case is about general allegations. And the district court said with those general allegations that they weren't specifically pled enough to plead the fraudulent allegations they should have pled because they were maybe not pleading fraud or at least about fraud, and therefore, it ought to be more specific. Well, Your Honor. I mean, it seemed to me that that case was pretty similar to this case. And said the good judge was right. Your Honor, I guess, I mean, there are two questions here. I mean, one is can we, did we satisfy Rule 9b with regard to the 11 emails that are attached and described? And in that regard, I can't imagine what else more could be put in there other than the elements of common law fraud that admittedly we're not going to rely upon like detrimental reliance or quantifiable damages. Because those emails are described in great detail as to how they're false or deceptive, how they violate the statute, when they were sent. It's hard to imagine how you could do more to satisfy Rule 9b. So the only question then is, is it enough to do it with the 11 and describe how they represent categories within the 380,000? Or do we have to do it for every single one of the 380,000? Do you have any cases under California law that are going to help you as to the nature of this violation? The nature of the pleading problem? Oh, in terms of the pleading requirement? Yes. What it is that you're having to prove? Well, Your Honor, my understanding is, and I'm not a California lawyer, is that California law doesn't contain an analog to Rule 9b. No, I wasn't asking a pleading question. I was asking what the nature of the false and deceptive language of the statute encompasses. I just was curious. Well, the legislative history of the California Unsolicited Commercial E-mail Act, the legislative findings, certainly support our view that the harm of e-mail is caused not by an individual transaction, but rather by its overwhelming volume. That's what really causes the harm. It's not that you get one or two annoying e-mails that are painful information. That they're phony. That they're phony. You get one or two phony ones. It's that you get 380,000 phony ones. Okay. And that's what causes the damage, and that's what makes it difficult to plead with particularity about each e-mail. Okay. You've more than used your time. Thank you. Good morning. Hank Burgoyne of Cronenberger Burgoyne on behalf of Consolidated Defendants. I think the Court seems to well understand what is actually at issue here. I think sometimes that plaintiffs wish we were actually here on another matter, which is the reunion.com matter. So often, I think, do plaintiffs confuse Judge Chesney's rulings and the facts of that case with Judge Chesney's rulings and the facts in this one. But Judge Chesney's order was very clear. Rule 9b requires that allegations sounding in fraud be pled with particularity. The Court didn't ask any questions. I will assume that as Judge Chesney concluded, the Court has concluded that on the face of the complaint, which is shot through every other paragraph, contains the word fraudulent, every cause of action incorporates all of those allegations, and then goes on to reallege fraudulent conduct, fraudulent conduct. It's hard to imagine a better example of a complaint that spoke to a unified course of fraudulent conduct, which is the standard that this Court has used to determine whether something falls under 9b. Hard to imagine a better example of a complaint that falls under 9b. And then Judge Chesney went on to conclude that the allegations in the complaint were wholly insufficient to state a $380 million set of claims based upon 380,000 separate and independent transmissions, based upon 11 samples, none of which was specifically alleged to have been sent by any of the defendants, none of which is alleged to be representative of any other emails, much less the remaining 379,989 emails, and none of which, as we described in our briefing, was specifically explained to be false or misleading. That's the issue here. The issue is not preemption. Now, it must be said, and I'm sure the Court's aware, in other cases under the California statute, district courts in this district have applied Rule 9b, a heightened pleading standard, based upon this Court's conclusion in the Gordon case that the preemption can spam relating to falsity or deception. State statutes, unless they speak to falsity or deception in an email, those state regulation statutes and rules are preempted. And in this court, district courts, based upon this Court concluding that by falsity or deception, Congress was talking in the vein of a tort and particular fraud, other courts have made the logical connection. Even if we're talking about state claims needing to sound in fraud, 9b automatically applies, and so a heightened pleading standard has been applied for that reason. Judge Chesney, though, didn't even need to get there in this case, because the complaint itself, and counsel hasn't argued, and I don't think credibly could argue, that this complaint does not allege a unified course of fraudulent conduct and base all the complaint's claims on that conduct. This is not a preemption case. If I were counsel for plaintiffs, I would want to be talking about preemption, and I wouldn't want to be talking about this complaint, and I think that's why counsel continues to go back to that issue and avoids what we should really be discussing here, and that are the specific allegations of this complaint. As this Court's aware, its cases are very clear. When we're talking about alleging a unified course of fraudulent conduct, a plaintiff needs to allege the who, the what, the when, the where, and the how. That means you have to allege the very specific statement made, who made that statement, when it was made, specifically what the statement said, and as explained in the Urish case, why that statement was false. If you're going to attempt to premise liability based upon a supposed conspiracy, the Schwartz case teaches us you need to allege specifically the role of each and every defendant in that conspiracy. What do we find here in this complaint? We find 11 sample emails and then a scatter shot of allegations concerning falsely registered domain names. What does that mean? What's a falsely registered domain name? Is that a domain name that was registered using someone else's information, inaccurate information, no information at all? Is it a domain name that was registered and then a defendant used what's called a privacy or a proxy service to hide the fact that they own it? We don't have any idea. This complaint doesn't tell us. What's the role of each defendant here? Plaintiffs have boilerplate allegations about conspiracy, aiding and abetting. In some cases they say that one or more defendants may have orchestrated an email on behalf of other defendants. I don't know what orchestrated means. The only specific evidence we have in the complaint about the relationship between defendants is a contract between Quicken Loans and Azugul, now Epic Advertising, that specifically states Azugul, when working on behalf of Quicken, shall not use unlawful means to generate sales leads. That negates the existence of a conspiracy, at least as relates to Azugul and Quicken. The idea that these reputable companies would be engaging in some weird backdoor smoke-filled room conspiracy whereby subscriber base, which was a marketing company, would agree to cooperate. Well, I'm not sure. How is all of that before us? Well, I think that's before you, Your Honor, insofar as we're getting back to the question of what in this complaint does this plaintiff need to allege in relation to even these 11 sample emails that are part of this fraudulent scheme. The who, the what, the when, the where, and the how. And to the extent the who, the sender of the emails or the author of the emails, isn't these defendants, how are these defendants even argued to be involved in this scheme? You won't find that level of detail anywhere in this complaint, either as relates to specific emails or to the existence of this conspiracy, generally speaking. I think there's other levels also on which the complaint falls short in terms of its specific allegations. First of all, specific allegations as to the emails. What emails are we talking about? We have 11 samples, and mind you, an email is a set of electronic data that's transmitted in several steps. What we have before the court is not an email. Well, I do. Let me just. The point was made that the discovery will, the purpose of discovery is to bring out all of the relevant transactions. And that in the ordinary case, it wouldn't be necessary to plead everything that's going to come out in discovery. To be clear, though, Your Honor, this is where plaintiff cites the Cooper and the Warshaw cases, I think, for the proposition essentially that you don't have to identify every specific transaction. But be careful here in the way that plaintiff uses the word transaction. In those cases, what was specifically alleged in conformity with 9b were the who, the what, the when, the where, and the how of the fraud, which is to say the fraudulent statements, which in this case would be the emails, were specifically identified, including by speaker and date. What those statements said was specifically articulated. Why those statements were false was specifically explained. Now, what the Cooper and Warshaw court said was if the why are those statements false, if, for example, you have a series of financial reports or statements by company officers, and those statements say our revenue is going to be X, and in fact, that's not true because the company was actually accounting for certain types of sales in a non-kosher way, you have to explain, Cooper and Warshaw said, you have to explain what you mean by accounting for those sales in a non-kosher way.  Well, if that, if, are you suggesting that if they simply pleaded more specifically the 11 emails and said there are 100,000 that are in all material respects just like this, more or less, and there are 100,000 like this and 50,000 like this, that that would be good enough? Well, I think that's a very stark. And in this sense, I would look to the consumer bargain giveaways case. I think this is the Judge Alsup opinion. And I don't remember, I believe the motions in that case, there was a 12B6 motion and also a motion for a more definite statement. And what Judge Alsup did there, and I will say I think the standard applied by Judge Alsup was not as rigorous as this Court's jurisprudence would suggest under 9B, because I think he did actually grant the motion for a more definite statement. But Judge Alsup specifically said you have to provide one sample of every single type of email. You have to say who sent it, when it was sent, and you have to explain, I believe this was in Judge Alsup's opinion, it's certainly clear in this Court's 9B cases, you have to explain why that was false. Take some of the subject lines here. Free ringtone. Plaintiffs don't even, in regard to that email, allege that that statement is false. They go on to include a couple paragraphs about how a Zugal was supposedly involved in illegal action in another state regarding something with ringtones. They don't even allege that that was false. Other subject lines, one is the terms of a loan that appears to be advertised as offered by Quicken Loans. Others say free plasma TV, free handbag. Plaintiffs say, oh, well, those are false. But false based on what? Did plaintiffs ever actually investigate? Did they follow up? Did they read the terms regarding these programs, click on a link, sign up for a program? Did they call defendants? Did they interview witnesses? Why is that statement false? There is nothing in this complaint that suggests a recipient of that email. And keep in mind, it's a marketing email, so a reasonable consumer standard applies, whether the FTC is looking at it or California authorities under California false advertising. Would a reasonable consumer who gets that email in light of all the terms of the program, would a reasonable consumer find that subject line to be false? Certainly they don't plead that. And what's more, they don't plead as required by the California statute regarding subject lines that defendants knew that subject line was likely to mislead a reasonable person. None of this is there. Sotomayor, can you provide us some assistance with respect to the legislative history or California decisions that shed some light on what the legislature really thought they were asking for or what they were prohibiting or what they were trying to cut back on in this statute? Sure, Your Honor. I think, and this is a problem that we have, I think, generally when we look at the word spam, I hate the word spam for the reason that it's incredibly imprecise. By spam, do we mean unlawful email? Do we mean unlawful, unsolicited email? Most people use spam to refer to all commercial email, including lawful email. When we talk about spam filters, spam filter doesn't know lawful from unlawful. It has an algorithm and a database, and the algorithm says if these terms or numbers appear in these ways, flag it and dump it into a box. So what do we mean by spam? When you read the preamble to the California legislation, it speaks to the costs visited by spam, and it appears they mean all commercial email on California businesses, consumers, the California economy. The problem that they're seeking to address is the problem of commercial email generally, and I'll add that this court and Congress, the U.S. Congress, don't think commercial email is a problem. In the Gordon case, this court made the point Congress wasn't trying to kill commercial email. They recognized it as a valuable commercial tool. They were trying to curtail certain abuses, the abuses which were actually making the adoption of commercial email more difficult. So that's what Congress was trying to curb, were the abuses of email. The California legislature, I think, was receiving so many complaints, so fed up with the general problem of commercial email. That's what the statute speaks to. How can that support your position that it's – that it has to be fraudulent? I'm sorry, that the – How does that tie into your position that it has to be fraudulent? Well, I think, Your Honor, our – I mean, our – let me say, I don't think we necessarily have a position in that regard. I mean, our position here is that the allegations of this complaint, which we're here on, were quite clearly alleged a unified course of fraudulent conduct. That's why 9b applies. But there also is – and keep in mind in the background here, we do have can-spam preemption. And the idea that Congress was seeking to create a national standard – and it tells us in the clauses that follow the can-spam preemption clause what Congress meant to preserve, and one of those things is fraud. And I think this Court picked up on that in Gordon, and hence its ruling. The – there is a mismatch, I think, in the California statute between the overall ill and what it can regulate. Take a look at the three prongs of the California statute that relate to using someone's domain name without their permission, supposedly falsified, misrepresented, forged headers, and the third one being subject lines likely to mislead. Two of those three don't even incorporate a mental state. I think this Court could find if it were dealing with preemption, which it's not in this case, the Court could find that two of those three prongs are on their face, preempted by the State statute. The third prong – Preempted not by the State statute. Excuse me, by can-spam. Pardon me, Your Honor. Preempted by can-spam. By the Federal statute. Federal. The third prong, which is, I think, the only one that basically survives can-spam preemption, speaks to a subject line that the sender or the advertiser under the State lexicon knows, knows would be likely to mislead a reasonable person. So there's where your fraudulent activity comes in. Knowledge of falsity, knowing that it's going to mislead, intent to mislead. But that's the only place that that comes in. Does the Court have any other questions about the statute of limitations or any of the other issues that we? Frankly, he didn't address them. I have no questions. No. We don't want to hear. I'll take the briefs. Thank you. Thank you. Thank you very much. Are there any further questions of the appellant? Did you want to make further arguments? If I could just have one moment. I know my time expired earlier. Yeah, it did. Time expired. That's why I said, are there any further questions? I have no further questions. All right. Thank you. The case that's argued is submitted for decision. The Court will stand in recess and will return sometime, hopefully within the next 15 minutes. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Moody, Schroeder, Smith N. R.